RICHARD T. AND PHYLLIS S. ECKHOUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eckhouse v. Commissioner
Docket No. 2405-91
United States Tax Court
T.C. Memo 1992-618; 1992 Tax Ct. Memo LEXIS 647; 64 T.C.M. (CCH) 1111; October 20, 1992, Filed *647 Decision will be entered under Rule 155. For Richard T. Eckhouse, pro se. For Respondent: Alan S. Kline. COHEN
COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined a deficiency of $ 12,287 in petitioners' Federal income taxes for 1986 and additions to tax under sections 6651(a)(1) ($ 745.75), 6653(a)(1)(A) ($ 622.35), 6653(a)(1)(B) (50 percent of the interest due on $ 12,287), and 6661 ($ 3,071.75). After concessions, the issues for decision are whether petitioners are entitled to deductions for moving expenses, home office expenses, employee business expenses, Schedule C expenses, and other miscellaneous expenses, and whether petitioners are liable for the additions to tax determined by respondent. Some of the facts have been stipulated, and the stipulated facts are incorporated herein by this reference. Because so few facts may be found based on the record in this case, we combine our findings of fact and opinion. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners Richard T. Eckhouse (petitioner) and Phyllis Susan Palin Eckhouse (Mrs. Eckhouse) *648 resided in Los Angeles, California, at the time they filed their petition. At all material times, petitioner was a certified public accountant. In late 1985 or early 1986, petitioner moved from Chicago to Los Angeles. After petitioner moved to Los Angeles, petitioners were married. They filed a joint return for 1986. On their tax return for 1986, petitioners claimed, among other things, the following items that are now in dispute: Moving expenses
$  5,522 Employee business expenses
6,682 Miscellaneous expenses
3,971 Schedule C expenses for husband's
certified public accounting
practice
8,620 (Amount now conceded by
respondent)
(490)
Schedule C expenses for wife's
real estate business
20,370 Medical and dental expenses
6,173 Petitioners' return for 1986 was filed on or after October 10, 1988. Petitioners have the burden of proving that respondent's determination is erroneous. Rule 142(a); , affg. . Mrs. Eckhouse did not appear at trial. Petitioner appeared and presented testimony and documents, some of which *649 were received in evidence and some of which were not received. For the reasons set forth below, we conclude that petitioner's testimony and documents are unworthy of belief and that petitioners have not satisfied their burden of proof. Preliminarily, however, we note that petitioner complained that he had not had time to prepare for trial and that he needed a continuance. The case was called for trial on June 15, 1992, pursuant to Notice Setting Case for Trial and Standing Pre-Trial Order served January 9, 1992. Petitioner failed to comply with the Standing Pre-Trial Order. Prior to the trial date, he had not delivered any documents to respondent in substantiation of his claimed expenses. In accommodation to petitioner's claim of personal family emergency 3 weeks prior to the trial date, he was allowed time to present substantiation to respondent's counsel even though the time for such production had passed. Trial of this case was set for the last day of the calendar to allow petitioner to produce his evidence, but the Court concluded that continuance was not justified. See Rule 134. Petitioner contends that he should be allowed the deductions claimed on his return because *650 he was audited for earlier years. He also argues that, because he could substantiate some expenses, we should assume that the balance of his return was correct. Neither of these contentions has merit. See . In support of his claim to moving expenses, petitioner presented a summary that he had prepared after the calendar call and fragmentary documents allegedly supporting the summary. One such document was labeled a "cash receipt" and was on lined yellow paper. The "receipt" appeared newly prepared and purported to recite payment by petitioner of the sum of $ 345 "for housing and car rental to P. Palin from January 2, 1986 to January 9, 1986. Payment per day . . . housing -- $ 30.00; car rental -- $ 13.00" (signed P. Palin). In relation to the alleged receipt, petitioner testified as follows: THE WITNESS: [Exhibit] Fourteen is a receipt for staying at P. Palin's apartment for those nights, from January 2nd to January 9th. THE COURT: Who is P. Palin? THE WITNESS: At that time it was just an acquaintance that I met. And so it was cheaper to stay there -- * * * than to stay in -- into a hotel. *651 THE COURT: What was the address where you stayed. THE WITNESS: Three-thirty South Almont. THE COURT: When did you get this receipt? THE WITNESS: Back in 1986. THE COURT: Where's P. Palin today? THE WITNESS: She lives in Los Angeles. The receipt was not received because it was unreliable hearsay. Explaining the absence of a "normal" receipt, petitioner stated: THE WITNESS: She, you know, it's typical that, you know, she doesn't typically rent out her apartment. THE COURT: Well, people don't typically pay to stay in a friend's apartment either. That's why some corroboration is necessary. THE WITNESS: Okay, I understand. At that time, she was just an acquaintance, so it was an arm's-length transaction. Petitioner never identified "P. Palin" as other than "just an acquaintance". Attached to petitioners' return for 1986 is a copy of a W-2 issued to Phyllis Susan Palin, 330 S. Almont Drive, Los Angeles. We infer that P. Palin is now Mrs. Eckhouse. Petitioners are not entitled to deduct on their tax return a payment made by one of them to the other, assuming that such payment was actually made. On his summary of alleged moving expenses, petitioner also inserted an item *652 for "expenses of settling a lease" that was apparently a duplication of an item claimed by petitioner on his 1985 tax return and allowed by respondent in that year. Other expenses claimed for 1986 appeared to have been incurred and deductible, if at all, in 1985. The copy of a rental agreement offered to show car rental charges incurred appeared to be reimbursable by an insurance company. The copy of an airline ticket offered to show the cost of transportation from Chicago to Los Angeles bore an unexplained reference to a refund. Petitioner's lack of candor was also demonstrated with reference to a claimed deduction for "seminars" appearing on both Schedules C attached to the tax return. On their separate Schedules C, the cost of $ 2,000 was divided equally between petitioner and Mrs. Eckhouse. The following colloquy occurred: THE COURT: What kind of seminar was that? THE WITNESS: For the abilities to supervise people working for you and to make them better employees. THE COURT: How many employees did you have in 1986? THE WITNESS: One part-timer. THE COURT: This is a seminar for what is commonly known as EST? THE WITNESS: No. THE COURT: This wasn't for Werner Erhardt? *653 THE WITNESS: Pardon. THE COURT: This wasn't Werner Erhardt? THE WITNESS: That is correct. * * * THE COURT: Well, your Exhibit 12 for identification, you show that as W. Erhardt and Associates. THE WITNESS: Yes. THE COURT: But you're telling me that that's not the same Werner Erhardt, the EST seminars in Northern California. THE WITNESS: Well, I meant they changed the name -- I -- so what you're asking is -- is this -- this is a -- these were different courses. THE COURT: What were the courses in? THE WITNESS: Called Mastery of Empowerment. Again petitioner cast doubt on the reliability of the balance of his testimony and purported documents. Petitioner failed to present any evidence, reliable or otherwise, that he satisfied the conditions for allowance of moving expenses, section 217(c)(2), or the home office deduction limitations of section 280A(c). We are not persuaded that the seminar expense, if paid, is a deductible educational expense. He presented no evidence or explanation of the other items in dispute. Under these circumstances, the failure of Mrs. Eckhouse to appear and testify justifies the inference that her testimony would not support petitioners' claims. *654 , affd. . We believe that petitioner's summaries are fabrications. To the extent, therefore, that petitioners' claims are based solely on petitioner's uncorroborated testimony, we cannot estimate any amounts of deductions to which they might have been entitled. Compare . In relation to the additions to tax determined by respondent, petitioner testified: THE COURT: * * * Anything else you want to testify about? Like why you didn't file your tax return on time? THE WITNESS: Basically, that -- that I got married, and I, you know, I was trying to become very, you know, businesswise successful, and then I got audited for '85, so I spent my time getting '85 together and which, you know, providing the backup and documentation to do that. So, by the time I was able to get to '86, I was late filing. THE COURT: Well, certainly as a result of your experience in '85, you would have known the importance of having those documents prepared for '86. THE WITNESS: *655 I understand, I was just after -- going through the procedure of being audited twice and then having to be audited again, I would -- I would have thought that -- that somewhere in the Internal Revenue System that they would realize that, you know, I was audited in '82; I was audited '85; and that why are they -- you know, that I've provided substantial documentation to provide that I was -- I was filing accurate tax returns and I was trying to -- to get this abated based on repetitious audit. THE COURT: Did you read any Internal Revenue Service publications or other publications dealing with moving expenses and what conditions were required before they were deductible? THE WITNESS: Yes. THE COURT: And by what criteria do you contend that your expenses are deductible? THE WITNESS: That it was over 35 miles and that change of jobs. THE COURT: You didn't read any other conditions? THE WITNESS: Pardon. THE COURT: You didn't see any other conditions? THE WITNESS: Whatever the conditions were, I met those conditions. THE COURT: How did you compute 3,000 miles on -- on Form 3903 as the distance from your old residence to your new work place? THE WITNESS: Well, from Chicago to Los *656 Angeles. THE COURT: Three thousand miles? THE WITNESS: Two thousand miles? Three thousand? It's over 35 miles. I don't know what the exact mileage is. THE COURT: Did you bother to try to check it out? THE WITNESS: No. I know it's over -- it's well over 35 miles. THE COURT: Anything else you want to testify about? THE WITNESS: No. Petitioners have not established reasonable cause for filing their tax return approximately 18 months late. The underpayment of tax was attributable to negligence. None of the circumstances for avoiding liability under section 6661 apply. The additions to tax are sustained. We warn petitioner that, if he presents another case to this Court with groundless claims, he risks imposition of a penalty under section 6673(a) not in excess of $ 25,000. To take account of respondent's concessions, Decision will be entered under Rule 155.